**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rahne Pistor, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>)<br>Carlos Garcia, et al., )<br>)<br>Defendants. )<br>)<br>_____ ) | No. CV-12-0786-PHX-FJM<br><br>**ORDER** |

**I. Background**

Plaintiffs Pistor, Abel, and Witherspoon are self-described advantage gamblers,[1] who

_____

[1]Advantage gambling is a legal method of gambling where players limit their play to games with a statistical advantage favoring the player.

The court has before it plaintiffs' motion for partial summary judgment against County Defendants Baxley, Newman, and McDaniel (doc. 106); County Defendants' response and cross motion for summary judgment (doc. 129); plaintiffs' response (doc. 161); plaintiffs' reply (157); and County Defendants' reply (doc. 164). We also have before us State Defendant's response and cross motion (doc. 132), plaintiffs' response (doc. 161), State Defendants' reply (doc. 165). Finally, we have before us plaintiffs' motion to strike (doc. 150), State Defendants' response (doc. 158), County Defendants' response (doc. 160), and plaintiffs' reply (doc. 162).

gambled at the Mazatzal Hotel & Casino. The Casino is owned and operated by the Tonto Apache Tribe and is located on tribal land. Plaintiffs allege that on October 25, 2011, they were seized by the State, County, and Tribal Defendants while inside the Mazatzal Casino, handcuffed, and taken to separate private rooms, where they were searched and their personal property was seized. Plaintiffs were held for approximately two hours and were all eventually released without any charges filed against them. Their personal property was taken into custody by Tribal Police Chief Carlos Garcia and was not returned for months.

Plaintiffs filed this action against three sets of defendants. Defendants Baxley, Newman, and Van Buskirk are deputies employed by the Gila County Sheriff's Office (who together with Gila County and the Gila County Sheriff's Office are referred to as "County Defendants"). Defendants McDaniel, Phillips, Nejo, and Loomis are police officers with the State of Arizona, Department of Gaming ("State Defendants"). And defendants Kaiser, Hoosava, and Garcia are Tonto Apache Tribal Police Officers ("Tribal Defendants"). Our ruling that the Tribal Defendants are not entitled to tribal immunity (doc. 44) is on appeal, and the proceedings against the Tribal Defendants are stayed pending that appeal (doc 82).

Plaintiffs have asserted nine causes of action: (1) violation of 42 U.S.C. § 1983 (search and seizure); (2) violation of § 1983 (illegal taking); (3) violation of § 1983 (substantive due process); (4) battery; (5) false imprisonment; (6) conversion; (7) defamation; (8) trespass to chattels; and (9) negligence. Plaintiffs move for summary judgment on their § 1983 and false imprisonment and battery claims asserted against defendants Baxley, Newman, and McDaniel. The County Defendants and the State Defendants move for summary judgment on all claims.

**II.**

In September 2011, Hubert Nanty, Executive Director of the Tonto Apache Tribal Gaming Office, requested assistance from defendant Carlos Garcia, the Chief of the Tonto Apache Police Department, in an ongoing investigation of plaintiffs' suspected criminal gaming activities. During his investigation, Chief Garcia came to believe that Abel, Pistor, and Witherspoon were using devices to manipulate and override the Casino's electronic

- 2 -

1  gaming machines in order to bet larger amounts and win larger payouts. Garcia decided to
2  detain the plaintiffs for questioning and because he had insufficient staff to simultaneously
3  detain 4 suspects, Garcia contacted the Gila County Sheriff's Office for assistance.[2] Gila
4  County Sheriff's Sgt. Travis Baxley assigned Officers Tony McDaniel, Terry Phillips, and
5  Ray Van Buskirk to assist with the detentions. Sgt. Baxley also contacted State Defendants
6  McDaniel and Phillips, detectives with the Arizona Department of Gaming, for additional
7  assistance. At a briefing just before the detentions, Chief Garcia instructed the Defendant
8  officers to "detain, handcuff, escort and search" the plaintiffs. County DSOF ex. D at 121.

9  On October 25, 2011, Detectives McDaniel and Phillips approached plaintiff Abel,
10 identified themselves as police officers and informed Abel that he was being detained for
11 possible gambling violations. They handcuffed Abel, led him to a conference room, searched
12 him and placed the contents of his pockets on a table. They removed the handcuffs and left
13 the room.

14 Also on October 25, 2011, Gila County Deputies Baxley and Newman detained and
15 handcuffed plaintiff Pistor and escorted him to a private room. They removed Pistor's
16 personal items from his pockets and placed them on a table in the room. They did not ask
17 any questions or otherwise interview Pistor. When the investigating officers arrived, Baxley
18 and Newman left the room and had no further contact with Pistor.

19 Chief Garcia and County Defendant Deputy Van Buskirk detained plaintiff
20 Witherspoon and escorted him to a private room. Witherspoon was not placed in handcuffs.
21 Van Buskirk removed Witherspoon's personal property from his pockets and placed it on a
22 table in the room. Van Buskirk left the room when the investigating officers arrived and had
23 no further contact with Witherspoon or his personal property.

24 Tribal Chief Garcia seized and maintained possession of all of the plaintiffs' personal
25 property on behalf of the Tribal Police until several months after the detentions. State
26 Defendant Lt. Nejo of the Arizona Department of Gaming's involvement consisted of two

---

[2] Garcia failed to recognize that he had no authority to detain the non-Indian plaintiffs.

- 3 -

15 to 20 minute interrogations of plaintiffs Abel and Witherspoon. State Defendant Loomis's only involvement was to observe Nejo's questioning.

### III. Plaintiffs' Motion to Strike

Plaintiffs move to strike the affidavit of Tribal Police Chief Carlos Garcia for the reason that all proceedings against Garcia, including discovery, are stayed pending the Tribal Defendants' appeal (doc. 150). Plaintiffs complain that Garcia submitted a declaration in support of the State and County Defendants' cross motions for summary judgment while plaintiffs are precluded by the stay from deposing Garcia.

First, plaintiffs' motion to strike is not permitted under LRCiv 7.2(m)(1) which authorizes a motion to strike only if it is authorized by statute or rule. LRCiv 7.2(m)(2) further prohibits litigants from using motions to strike for purposes of objecting to the admissibility of evidence offered in support of a motion.

Additionally, the stay relates to the proceedings against the Tribal Defendants. Plaintiffs have failed to show that the stay also includes a deposition of Garcia as a non-party fact witness. Apparently plaintiffs never sought to take Garcia's deposition. There is no reason to believe that a stay of proceedings against Garcia as a party extends to a deposition of Garcia as a non-party fact witness. The case against the remaining defendants is proceeding despite the stay. Garcia's testimony as a fact witness must be available to process this case. Accordingly, it is ordered denying the motion to strike (doc. 150).

### IV. Defendants' Motion for Summary Judgment

The State and County Defendants argue that they are entitled to summary judgment on all federal claims because (1) the officers were not acting under color of state law; (2) the detentions were supported by probable cause; and (3) the officers did not seize any personal property.

### A. Nature of the Detention

A <u>Terry</u> stop is a brief, minimally intrusive, investigatory detention. <u>Terry v. Ohio</u>, 392 U.S. 1, 88 S. Ct. 1868 (1968). Although a <u>Terry</u> stop is a "seizure" under the Fourth Amendment, it is nevertheless lawful provided that the police officer has reasonable

- 4 -

suspicion "that criminal activity may be afoot." Id. at 30, 88 S. Ct. at 1885. A detention that exceeds the permissible scope of a Terry stop must be supported by probable cause. United States v. Brignoni-Ponce, 422 U.S. 873, 882, 95 S. Ct. 2574, 2580 (1975).

Considering the objective characteristics of the encounters, we easily conclude that plaintiffs' detentions exceeded the scope of a Terry stop. Pistor, Abel and Witherspoon were each confronted in the Casino and taken to private rooms. Abel and Pistor were immediately handcuffed. Each was searched and his personal property removed. Plaintiffs were detained under guard for more than two hours. Physical handling and forced relocation suggest an arrest rather than an investigatory detention. Washington v. Lambert, 98 F.3d 1181, 1189 (9th Cir. 1996). Moreover, handcuffing "is not part of a typical Terry stop." Id. at 1188. Plaintiffs' detentions were neither brief, limited, nor consensual. Therefore, to be lawful, they must be supported by probable cause.

## B. State Action

Before turning to the probable cause analysis, we address Defendants' argument that plaintiffs' § 1983 claims fail because there was no state action. In order to maintain a § 1983 claim, plaintiffs must demonstrate that the State and County Defendants were "acting under color of state law" when they detained the plaintiffs. 42 U.S.C. § 1983. The state action requirement is satisfied when the party charged with the constitutional deprivation "may fairly be said to be a state actor." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S. Ct. 2744, 2754 (1982).

The State and County Defendants argue that they participated in a Tribal police investigation, the detentions were initiated by the Tribe, and carried out pursuant to Tribal authority, on Tribal land, and as such they were acting under Tribal, not state, law. They contend that "no action under 42 U.S.C. § 1983 can be maintained in federal court for persons alleging deprivation of constitutional rights under color of tribal law." R.J. Williams Co. v. Ft. Belknap Hous. Auth., 719 F.2d 979, 982 (9th Cir. 1983).

As officers of the county and state police forces, Defendants are "state actors." Their only authority is derived from their positions as state and county police officers. Defendants

do not contend that they acted pursuant to an inter-governmental agreement that authorized state officers to be cross-deputized, or to otherwise act on behalf of the Tribe. Without some authorization, the State and County Defendants could not act on behalf of the Tribe.

More importantly, however, Indian tribes do not have criminal jurisdiction over non-Indians. Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 98 S. Ct. 1011 (1978). The Tribal Police had no authority to seize the non-Indian plaintiffs or their property. If the State and County Defendants were operating pursuant to Tribal authority as they claim, then they were acting unlawfully by seizing non-Indians.

We conclude that the State and County Defendants, who are in fact "state actors," were acting pursuant to state or county—not Tribal–authority when they detained plaintiffs at the Casino. Therefore, Defendants were acting under color of state law for § 1983 purposes.

### C. Probable Cause

Defendants contend that even if they were acting under color of state law, plaintiffs' § 1983 claims fail because the plaintiffs' arrests were supported by probable cause. Again, we disagree. "[A]n arrest is lawful . . . only if it is accompanied by probable cause to believe that the arrestee has committed, or is committing, an offense." Conner v. Heiman, 672 F.3d 1126, 1132 (9th Cir. 2012) (citation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152, 125 S. Ct. 588, 593 (2004).

"[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Id. Therefore, we reject plaintiffs' argument that the Defendant officers' use of the words "investigation" and "suspicion" in their incident reports necessarily limits the permissible scope of the detentions to a Terry stop. Semantics and subjective intent are irrelevant to our analysis. Instead we consider whether, under the "totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." Conner, 672 F.3d at 1132.

The Defendant officers did not personally observe plaintiffs' gambling activities. The officers' only information regarding plaintiffs' alleged criminal activity was reported to them by Tribal Police Chief Garcia. Under the "collective knowledge" doctrine, we may "impute police officer's collective knowledge to the officer conducting a stop, search, or arrest." United States v. Villasenor, 608 F.3d 467, 475 (9th Cir. 2010). Where one officer knows facts constituting probable cause and he "communicates an appropriate order or request, another officer may conduct a warrantless stop," United States v. Ramirez, 473 F.3d 1026, 1037 (9th Cir. 2007), "regardless of whether the information giving rise to probable cause was actually communicated to the officer conducting the stop," id. at 1032.

Applying the collective knowledge doctrine, the arresting officers knew that (1) in mid-September 2011, Garcia came to suspect that plaintiffs were engaged in criminal gaming activity because of their extraordinarily rapid rise to top player status; (2) plaintiffs appeared to be working together, although they pretended not to know each other; (3) Garcia suspected that plaintiffs were able to increase the number of credits available on the gaming machines by punching certain sequences of numbers into hand-held devices that looked like cell phones; (4) Garcia believed that plaintiffs were able to override the machines, allowing them to wager more than the machines were programmed to allow; (5) Garcia observed plaintiffs "physically place and hold their cell phones or other foreign objects against the gaming machines in a particular place for long periods of time"; (6) Garcia personally observed plaintiff Abel "put in a four digit number on his phone and push[] send, . . . the phone began blinking, . . . [and] the credits display on the machine start appearing"; and (7) Garcia was informed that Witherspoon "beat[] the house 98% of the time he played." County DSOF ¶ 10; Garcia Decl. ¶¶ 8-12. Garcia also found it suspicious that plaintiff Witherspoon would "place a small donkey shaped statuette near the front of the machine he was playing," id. ¶ 12, and that plaintiffs "would keep their money in their left front pants pocket and would use it to play," id. ¶ 16.

This support for probable cause is thin at best. Chief Garcia suspected that plaintiffs were engaged in criminal activity, but he identified no criminal offense. All of plaintiffs'

suspicious behaviors are consistent with lawful conduct. Despite hundreds of hours of video-recorded surveillance, defendants have cited to no video evidence of any illegal or even suspicious behavior by plaintiffs. Garcia also knew that plaintiffs were "advantage players"–players who legally maximize their success by only playing those games that provide a statistical advantage to the players. The use of cell phones while gambling, keeping money in the same pants pocket, and using lucky charms are all innocuous legal behaviors. Winning at gambling is not evidence of criminal activity. The facts as presented would not cause a reasonably prudent officer to believe that the plaintiffs were committing a crime. Indeed, not a single specific statutory offense is identified in any of the memoranda here.

A probable cause "analysis involves both facts and law. The facts are those known to the officers at the time of the arrest. The law is the criminal statute to which those facts apply." Rosenbaum v. Washoe County, 663 F.3d 1071, 1076 (9th Cir. 2011). Here, neither the briefs, exhibits, affidavits, nor statements of facts–of any defendant–mentions what crime is alleged to have been committed. In order to find probable cause, one must be able to point to a violation of some law. We agree that "[i]t is enough that [the officers] have probable cause to believe the defendant has committed one or the other of several offenses, even though they cannot be sure which one," United States v. Prandy-Binett, 995 F.2d 1069, 1073-74 (D.C. Cir. 1993), but here defendants make no effort to identify *any* law that was violated. Referring generally to "gaming fraud" is insufficient. A court cannot be expected to go "truffle hunting" through every gaming law to identify an offense to fit plaintiffs' conduct. See Gutierrez v. Kermon, 722 F.3d 1003, 1012 n.3 (7th Cir. 2013). For all of these reasons, we conclude that Defendants have failed to establish that probable cause existed to support plaintiffs' arrests.

### D. Seizure of Property

Plaintiffs also complain of Fourth Amendment and Due Process violations with respect to the seizure of their personal property, including cell phones, cash, casino cash-out tickets, an MP-3 player, and a good luck plastic donkey. A "seizure" of property occurs

when "there is some meaningful interference with an individual's possessory interests in that property. Soldal v. Cook County, 506 U.S. 56, 61, 113 S. Ct. 538, 543 (1992). "In the ordinary case, the Court has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." United States v. Place, 462 U.S. 696, 701, 103 S. Ct. 2637, 2641 (1983). "[T]he police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure." Terry, 392 U.S. at 20, 88 S. Ct. at 1879.

We reject Defendants' argument that the search was justified as a search incident to a valid arrest, which "is a traditional exception to the warrant requirement of the Fourth Amendment." United States v. Robinson, 414 U.S. 218, 224, 94 S. Ct. 467, 471 (1973). A search incident to an arrest is valid only if the arrest itself is lawful. We have already concluded that the arrests were conducted without probable cause and were therefore unlawful.

This was a planned warrantless seizure. With Chief Garcia, the Defendant officers planned in advance to seize the individuals, search their persons, and seize their property. "The opportunity for search was thus hardly fleeting." Coolidge v. New Hampshire, 403 U.S. 443, 460, 91 S. Ct. 2022, 2035 (1971). There were no exigent circumstances that would justify a warrantless seizure. Id. The seizure was planned in advance, conducted without probable cause and was therefore unconstitutional.

The State and County Defendants also claim that they have no § 1983 liability with respect to the seized property because Chief Garcia, not the deputies, seized plaintiffs' property. Again we reject Defendants' argument.

The State and County Defendants instructed plaintiffs to empty their pockets and place their personal property on tables in the detention rooms. The officers then quit the scene, leaving plaintiffs' property in the control of Chief Garcia. But Garcia had no authority to seize non-Indian property. An officer cannot avoid § 1983 liability by depriving individuals of their personal property and then transferring the property to someone with no

authority over it. We conclude that the State and County Defendants violated plaintiffs' constitutional rights by improperly seizing their personal property.

### E. Qualified Immunity

Even if the arrests and seizures were without probable cause, the officers may still be immune from liability if it was objectively reasonable for them to believe that they had probable cause. Rosenbaum, 663 F.3d at 1078. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). In order to determine whether an officer is entitled to qualified immunity, we decide "(1) whether the facts alleged show that the officer violated a constitutional right; and (2) if so, whether that right was clearly established at the time of the event." Rosenbaum, 663 F.3d at 1075. "The linchpin of qualified immunity is the reasonableness of the official's conduct." Id.

We have determined that the Defendant officers failed to established that the arrests or seizures were supported by probable cause. Therefore, plaintiffs' constitutional rights were violated. We further conclude that it was clearly established at the time of the misconduct that an arrest or seizure lacking in probable cause is unlawful.

However, an officer who makes an arrest or seizure without probable cause "may still be entitled to qualified immunity if he reasonably *believed* there to have been probable cause." Id. at 1076. In other words, we consider whether the Defendant officers' reliance on the collective knowledge of the investigating officers was objectively reasonable. See United States v. Hensley, 469 U.S. 221, 232, 105 S. Ct. 675, 682 (1985). We conclude that a reasonable officer faced with the circumstances presented in this case would have questioned whether a warrant had been obtained in advance of the search and seizures and would have understood that probable cause did not exist to support the arrests or seizures. Defendant officers are not entitled to qualified immunity.

### F. State Law Claims

1   The County and State Defendants seek summary judgment on all state law claims. Notwithstanding that 5 of the 6 state law claims assert intentional torts (battery, false imprisonment, conversion, trespass to chattels,[3] and defamation), Defendants argue that police officers are immune from liability for simple negligence in police work. They cite Landeros v. City of Tucson, 171 Ariz. 474, 475, 831 P.3d 850, 851 (Ct. App. 1992), for this proposition, but Landeros held only that a city may be liable if its police officers are grossly negligent in the investigation of a crime. Id.  Therefore, Landeros does not apply to a claim for negligence in effecting an arrest and seizure of property. Defendants' motion for summary judgment on plaintiffs' negligence claim is denied.

Because negligence is not an element of plaintiffs' remaining state law claims, and based on our conclusion that the arrests and seizures were unlawful, the Defendant officers' motions for summary judgment on the remaining state law claims are denied.

We grant, however, the Defendant officers' motion for summary judgment on plaintiffs' defamation claim. Plaintiffs argue that they were confronted by uniformed officers in a public area, and in the case of Pistor and Abel, were handcuffed and escorted through the Casino to private rooms. Plaintiffs contend that their arrests in public communicated to those present that plaintiffs were criminals. But the law of defamation in Arizona requires "a false and defamatory statement concerning another." Fendler v. Phoenix Newspapers Inc., 130 Ariz. 475, 479, 636 P.2d 1257, 1261 (Ct. App. 1981) (quoting Restatement (Second) of Torts, § 558 (1977)). Plaintiffs have not alleged that defendants made any false or defamatory statement. Therefore, plaintiffs have failed to state a claim against Defendants for defamation.

In summary, Defendants' motions for summary judgment on plaintiffs' defamation claim are granted. The motions are denied with respect to the other state law claims.

## V. **Defendant Gila County Sheriff's Office**

---

[3]There is no distinction between claims for conversion and claims for trespass to chattel. See SWC Baseline & Crimson Inv. v. Augusta Ranch Ltd., 228 Ariz. 271, 293, 265 P.3d 1070, 1092 (Ct. App. 2011).

- 11 -

The County Defendants also seek summary judgment in favor of the Gila County Sheriff's Office on all claims. "Governmental entities have no inherent power and possess only those powers and duties delegated to them by their enabling statutes." Braillard v. Maricopa County, 224 Ariz. 481, 487, 232 P.3d 1263, 1269 (Ct. App. 2010). A "governmental entity may be sued only if the legislature has so provided." Id. The Gila County Sheriff's Office is a non-jural entity that has no capacity to sue or to be sued. See id. Therefore, summary judgment is granted in favor of the Gila County Sheriff's Office on all claims.

### VI.  Defendant Gila County – Section 1983 Claims

The County Defendants also seek summary judgment in favor of Gila County on all claims. Gila County cannot be vicariously liable under § 1983, but instead can be liable only if its policy or custom caused the constitutional deprivation complained of. Monell v. Dept. of Soc. Serv., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978). Plaintiffs make no claim, nor have they presented any evidence, that a policy or custom of Gila County was the moving force behind the alleged constitutional violation. Without such claim or evidence, Gila County is entitled to summary judgment on plaintiffs' § 1983 claims.

### VII.  Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs seek summary judgment against defendants Baxley, Newman, and McDaniel only on their § 1983 and state law claims of false imprisonment and battery. The entire basis of their argument is that these three defendants used language in their incident reports ("investigation" and "suspicion") that would necessarily limit the permissible scope of their detentions to a Terry stop. We have already rejected this argument. See infra § IV (C). Nevertheless, we grant plaintiffs' motion for summary judgment because we conclude that there is no dispute of material fact that Baxley, Newman, and McDaniel violated plaintiffs' constitutional and state law rights by arresting plaintiffs and seizing their personal property without probable cause, and that these officers are not entitled to qualified immunity. Therefore, plaintiffs' motions for summary judgment against Baxley, Newman, and McDaniel on their § 1983 and state law claims of false imprisonment and battery are granted.

### VIII. Conclusion

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** Defendants' cross-motions for summary judgment (docs. 129, 132). The motions are granted with respect to Defendants Gila County Sheriff's Office and Gila County. The motions are also granted with respect to plaintiffs' defamation claim. The motions are denied with respect to all other claims.

**IT IS FURTHER ORDERED GRANTING** plaintiffs' motion for partial summary judgment with respect to Defendants Baxley, Newman and McDaniel on plaintiffs' § 1983 claims and state law claims of false imprisonment and battery (doc. 106).

**IT IS FURTHER ORDERED DENYING** plaintiffs' motion to strike (doc. 150).

DATED this 13th day of January, 2014.

*Frederick J. Martone*
Frederick J. Martone
Senior United States District Judge